**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

vs.                                                                    Case No. 3:13-cr-100-J-32JRK

JOHN EDWIN CORN, JR.

_____

**ORDER**

This case is before the Court on Defendant's Renewed Motion for Judgment of Acquittal (Doc. 88) and Motion for New Trial (Doc. 89), to which the government has responded (Doc. 92; Doc. 93).

**I.      BACKGROUND**

On May 16, 2013, a grand jury returned an indictment against Defendant John Edwin Corn, Jr., charging him with two counts of robbery in violation of the Hobbs Act, 18 U.S.C. § 1951(a)[1] (one of which was later dismissed), two counts of attempted robbery, and one count of possessing and brandishing a firearm in furtherance of an attempted robbery in violation of 18 U.S.C. § 924(c)(1)(A)(ii).[2]   (Doc. 1-1).   The

---

[1] 18 U.S.C. § 1951(a) provides:

Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

[2] 18 U.S.C. § 924(c)(1)(A) provides in part:

[A]ny person who, during and in relation to any crime of violence . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses

government alleged that, in the span of approximately two weeks in October 2012, the defendant robbed or attempted to rob three Publix supermarkets and brandished a pistol during one failed attempt.   According to the government, Corn robbed $7,224.26 from a Publix in Palm Harbor, Florida on October 6, 2012, then unsuccessfully attempted to rob a Publix in Orlando, Florida on October 13, 2012 and a Publix in Jacksonville, Florida on October 21, 2012.   Corn denied the charges, and the case went to trial.

Along with other evidence, the government called eight eyewitnesses to the robbery and attempted robberies in its case-in-chief, seven of whom, to varying degrees, identified Corn as the robber.   Corn challenged the reliability of these identifications (and the other evidence) on cross examination and, at the close of the government's case, moved for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29.   The Court reserved ruling at that time pursuant to Rule 29(b).

Then, in his case, Corn presented two law enforcement witnesses who testified that certain individuals other than Corn were initially suspected of the Orlando attempted robbery.   After Corn rested his case, the Court again reserved ruling on the motion for judgment of acquittal.   The government presented no rebuttal

---

a firearm, shall, in addition to the punishment provided for such crime of violence . . .

. . . .

(ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years.

evidence.   The jury's verdict was guilty on Counts One through Four of the Indictment.   (Doc. 86.)   On May 27, 2014, the Court adjudicated Corn guilty of these counts.   (Doc. 87).

Corn timely renewed his motion for judgment of acquittal challenging the sufficiency of the evidence to support conviction.   (Doc. 88.)   He also timely moved for a new trial pursuant to Federal Rule of Criminal Procedure 33 based on alleged misconduct by the government and the weight of the evidence.   (Doc. 89.)   The government filed responses in opposition to each motion.   (Doc. 92, Doc. 93.)   Upon review of the parties written submissions and oral argument at trial, the applicable law, and the record, the Court rules as follows.

## II.    STANDARDS OF REVIEW

"'In considering a motion for the entry of a judgment of acquittal, a district court must view the evidence in the light most favorable to the government, and determine whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt.'"   United States v. Garcia, 447 F.3d 1327, 1334 (11th Cir. 2006) (quoting United States v. Miranda, 425 F.3d 953, 959 (11th Cir. 2005)).   "'It is not necessary for the evidence to exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt . . . .'"   Garcia, 447 F.3d at 1334 (quoting United States v. Bell, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc)).   If the court reserved ruling on a defendant's Rule 29 motion at the close of the government's case, it considers only the evidence up to that point.   Fed. R. Crim. P. 29(b); United States v. Moore, 504 F.3d 1345, 1346-47 (11th Cir. 2007).

3

Under Rule 33, a court may "grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Where a motion for new trial is based on the weight of the evidence, "the court need not view the evidence in the light most favorable to the verdict. It may weigh the evidence and consider the credibility of the witnesses." United States v. Hernandez, 433 F.3d 1328, 1335 (11th Cir. 2005) (quoting United States v. Martinez, 763 F.2d 1297, 1312 (11th Cir. 1985)). "If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury." Id. (quoting Martinez, 763 F.2d at 1312). While the discretion afforded the district court to grant a new trial is "quite broad, there are limits to it." Martinez, 763 F.2d at 1312. As the Eleventh Circuit explained in Martinez:

> The court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable. The evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand. Motions for new trials based on weight of the evidence are not favored. Courts are to grant them sparingly and with caution, doing so only in those really "exceptional cases."

Id. at 1312-13 (citations omitted).

A motion for a new trial based on some other trial error must demonstrate that the error created circumstances which rendered the trial "fundamentally unfair." See United States v. Campa, 459 F.3d 1121, 1153 (11th Cir. 2006).

4

## III.   ANALYSIS

### A.   Renewed Motion for Judgment of Acquittal

#### 1.   The Hobbs Act

"Two elements are essential for a Hobbs Act prosecution:   robbery and an effect on commerce."   United States v. Rodriguez, 218 F.3d 1243, 1244 (11th Cir. 2000). Robbery is defined in the Hobbs Act as:

> [T]he unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

18 U.S.C. § 1951(b).

"'Commerce is affected when an enterprise, which either is actively engaged in interstate commerce or customarily purchases items in interstate commerce, has its assets depleted through extortion, thereby curtailing the victim's potential as a purchaser of goods.'"   United States v. Ransfer, 749 F.3d 914, 936 (11th Cir. 2014) (applying depletion theory in Hobbs Act robbery case) (quoting United States v. Jackson, 748 F.2d 1535, 1537 (11th Cir. 1984)).   "The government need only show a minimal effect on interstate commerce to support a violation of the Hobbs Act.'" Rodriguez, 218 F.3d at 1244.

#### 2.   Identification Testimony

The crux of Corn's argument for acquittal is that the identification evidence forming the basis for the government's case was insufficient to support conviction. (Doc. 88.)   Corn contends that the various eyewitness identifications, both inside and

5

outside of court, are unreliable and that the video evidence of the robberies does not limit the possible suspects to Corn alone.   (Id. at 1-4.)

The government responds that the reliability of the eyewitness testimony was tested on direct and cross examination and was addressed in a jury instruction.   (Doc. 92 at 1-2.)   The jury, tasked with weighing the evidence, found Corn guilty.   (Id. at 2.)   While recognizing the importance of the eyewitness testimony, the government notes that it also presented the jury with videos, photos, vehicle registration documents, descriptions of the crime, and the opportunity to view for themselves Corn's unique shoulder deformity.   (Id. at 3.)   The government urges the Court to uphold the verdict and deny the motion for judgment of acquittal.

At trial, seven of the eight eyewitnesses identified Corn as the robber, with varying degrees of certainty, though none of them had identified him in any photo spread before trial.   Their descriptions of the robber to the police after the incidents ranged in height from 5' 3" to 5' 9" and included recollections that he was "some skinny kid" in his twenties or a man in his mid-forties.   At trial, a few of the witnesses testified that the robber had a "lean," "hunch," or "dip" in his shoulder or neck, though it is mentioned in only one of the witnesses' statements to the police.   The witnesses described the various outfits or disguises the robber wore, including a cap, possibly a wig, and, at the October 6, 2012 robbery, blocky, black skin or face paint.   Two witnesses to that robbery initially described the robber to the police as possibly a black man, though they each qualified that description at trial.   The record reflects that Corn is a white man, was sixty-two years old at the time of the robbery, and has a

noticeable shoulder deformity.

In addition to the identification testimony, the government presented surveillance videos and stills of the incidents and videos of Corn visiting a friend at a local prison facility in Jacksonville a few days before and a few days after the Jacksonville robbery.   The government also introduced the vehicle registration records for a 1998 Ford Explorer owned by Corn.   One witness, Kenneth Bellido, a manager at a Publix store in Winter Springs, Florida, testified that, when Corn entered the Winter Springs store on November 8, 2012, Bellido recognized Corn from a BOLO circulated by Publix.   Bellido then saw Corn leave in a vehicle and was able to remember the vehicle's license plate number when the police arrived.   The registration documents and the testimony of the responding officer linked that plate number to Corn's 1998 Ford Explorer.   The government also called Officer M.Z. McNamee of the Jacksonville Sheriff's Office, who testified that she pulled Corn over in the same vehicle in Jacksonville on October 20, 2012, placing him in Jacksonville the day before the Jacksonville Publix was robbed.   The government did not present any fingerprint or other forensic evidence tying Corn to the robberies.

In his case, Corn presented the testimony of two law enforcement officers who testified that they had considered three other suspects for the Orlando attempted robbery at one point and that they were not able to rule those suspects out based purely on the surveillance videos or a photo spread shown to Vanessa Giles, the manager of the Orlando store.

Whether considering only the evidence at the close of the government's case or

after the presentation of the defense's case, the Court finds that a reasonable jury could have found Corn guilty beyond a reasonable doubt.   While there is no doubt that there were potential discrepancies and concerns about the accuracy of the eyewitness testimony, those issues were put directly before the jury.[3]  "The jury is free to choose among reasonable inferences to be drawn from the evidence presented at trial, and the district court must accept all reasonable inferences and credibility determinations made by the jury."  United States v. Almanzar, 634 F.3d 1214, 1221 (11th Cir. 2011); see Jackson v. Virginia, 443 U.S. 307, 319 (1979).   The jury was well advised of how to assess the reliability of the identification testimony by the parties' examinations and arguments and the Court's instructions.   In its jury instructions, the Court utilized the general Eleventh Circuit Pattern Jury Instructions on witness testimony, as well as the instruction on identification testimony.   (Doc. 85 at 6-9.)   So the jury was encouraged to question the accuracy of this testimony by considering the adequacy of the witness's opportunity to observe the person, how long the witness had, how close the witness was, whether anything affected the witness's ability to see, and whether the witness knew or had seen the person before, as well as how and when it was the witness identified the defendant.   (Doc. 85 at 8-9.)   Seven witnesses identified Corn in some manner at the trial.   The Court cannot now substitute its assessment of the credibility of this testimony in place of the jury's.

Moreover, a reasonable jury could consider the identification testimony in

---

[3] The Court is aware of the ongoing controversy regarding the reliability of eyewitness testimony.   Here, though, the jury was made well aware of the problems with eyewitness testimony and nevertheless found the evidence sufficient.

conjunction with the videos and the documentary evidence.  And though Corn's law enforcement witnesses testified that they could not rule out certain other suspects from video of the Orlando attempted robbery, a reasonable jury could review the video for itself, along with the photos of those suspects, the photos of Corn, and their own observation of Corn throughout the trial, and reach its own conclusion as to whether it was Corn on the video.

Corn, through his able counsel, rightfully probed the accuracy of the evidence and raised legitimate questions for the jury to consider.  However, it was not unreasonable for the jury to conclude that the evidence proved beyond a reasonable doubt that it was Corn who robbed the Palm Harbor Publix and attempted to rob the Publix stores in Orlando and Jacksonville.

### 3.   **Interstate Commerce**

Corn also argued at the close of the government's evidence that it had not proved a sufficient connection to interstate commerce.  Viewing the evidence in the light most favorable to the government, the Court disagrees.

The Eleventh Circuit has been clear that a "'mere depletion of assets' of a business engaged in interstate commerce will meet the requirement [of the Hobbs Act]."  United States v. Rodriguez, 218 F.3d 1243, 1244 (11th Cir. 2000).  The testimony at trial was that Publix is a regional supermarket chain and that the Palm Harbor, Orlando, and Jacksonville stores receive shipments from outside of Florida.  There is no doubt that the completed October 6, 2012 robbery, during which $7,224.26 was taken, certainly qualifies.

As for the attempted robberies, Vanessa Giles, manager at the Orlando Publix store, estimated that the store lost thousands of dollars in sales by closing approximately forty-five minutes to an hour early due to the police investigation. And Maxwell Carillo, an employee at the Jacksonville Publix store, testified about the impact of that attempted robbery on the store's ability to stock shelves and run its customer service counter.    This evidence is sufficient under Eleventh Circuit precedent to establish an effect on interstate commerce.   See United State v. Guerra, 164 F.3d 1358, 1361 (11th Cir. 1999).

### 4.      **Possession of a Firearm**

At the close of the government's case, Corn argued that there was insufficient evidence that a firearm, as defined in the statute, was involved in the October 13, 2012 attempted robbery to sustain a conviction under 18 U.S.C. § 924(c).

"[T]he government need not show to a scientific certainty that a defendant is carrying a device that fires projectiles by means of an explosive," "offer the gun itself into evidence or produce an expert witness to identify a 'firearm.'"   United States v. Woodruff, 296 F.3d 1041, 1049 (11th Cir. 2002) (citing United States v. Hunt, 187 F.3d 1269, 1271 (11th Cir. 1999)).   Instead, the jury is entitled to weigh the evidence, including lay witness testimony, to decide if the object in question was a gun.   Hunt, 187 F.3d at 1271 (citing United States v. Jones, 16 F.3d 487, 491 (2d Cir. 1994)).

Though no gun was introduced at trial and the videos of the October 13, 2012 incident do not show a firearm, the Court finds that a reasonable jury could conclude from the testimony of Vanessa Giles that the robber did brandish a firearm.

**B.    Motion for New Trial**

**1.    <u>Prosecutorial Misconduct</u>**

Corn's primary argument in support of a new trial is that the government made certain statements during closing argument and rebuttal that it knew were false in order to mislead the jury into believing that Corn's 1998 Ford Explorer had been at the scene of the October 6, 2012 robbery.  (Doc. 89 at 1-8.)  Corn argues that the government knew Corn had not acquired the vehicle until two days later, so it was improper for the government to suggest otherwise during its rebuttal argument.  (<u>Id.</u> at 7-8.)  Corn contends that, given the importance to the government's case of Kenneth Bellido's identification of Corn's vehicle on November 8, 2012, these supposed misstatements presented the jury with "a distorted picture of the realities" of the case, necessitating a new trial.  (<u>Id.</u> at 5-8.)

The government says it did not argue that Corn's Explorer was at the scene of the October 6 robbery.  (Doc. 93 at 1.)  Instead, the government says it agreed with defense counsel that David Kennedy did not identify the Explorer, and argued that the value of the dates on the vehicle registration was minimal.  (<u>Id.</u> at 2.)  The government maintains that, in any event, it may argue reasonable inferences from the evidence (<u>id.</u>), and that it in no way engaged in the kind of grievous misconduct that occurred in the cases Corn cites in his motion (<u>id.</u> at 3).

Upon careful review of the record and the applicable law, the Court agrees that the government made a brief misstatement, but declines to order a new trial.  The Eleventh Circuit has suggested that courts consider certain factors in evaluating

prosecutorial misconduct:

> (1) the degree to which the challenged remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether they are isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the competent proof to establish the guilt of the accused.

Davis v. Zant, 36 F.3d 1538, 1549 (11th Cir. 1994).

The primary potentially misleading statements at issue came during the government's rebuttal, when it said:

> But look at [the vehicle registration] report.  I'm not going to pull it up again now, but you can take a look at it.  I'm not entirely certain that's just not the acquisition of the title date and not the acquisition of the purchase date.  It's subject to some ambiguities.  So you determine whether it's meaningful to you or not.

(Trial Tr. 4, May 14, 2014, Doc. 89.)   Corn objected immediately thereafter; at sidebar, the Court instructed the government to move on; and the government did so.[4]   (Id. at 5.)

In its response to the motion for new trial, the government does not back away from the alleged misstatement, arguing "That the document referenced a purchase date *and not an acquisition date* was more than an inference, *it was a fact*."   (Doc. 93 at 3 (emphasis added).)   But it wasn't.   The document actually says "ACQ. DATE," not "PURCHASE DATE" or some abbreviation thereof.[5]   (Gov't Ex. 6.)

---

[4] Corn did not request any further relief at that time.

[5] Defendant's Exhibit 2 was not admitted at trial.   Nevertheless, this printout of the Explorer's vehicle status from the Florida Driver and Vehicle Information Database includes the entry "Title Issue Date: 10/26/12."   That entry suggests that "ACQ. DATE" could not refer to the date of acquisition of the vehicle's title, as suggested by the government.

But regardless of what the Florida Department of Highway Safety and Motor Vehicles means when it says "ACQ. DATE" in its vehicle registration documents, the government should at least have known that Corn physically acquired the Explorer no earlier than October 8, 2012.  A sheriff's report summarizing an interview with Mike Gianfilippo, the man who sold Corn the vehicle, states that "John Corn purchased a green 1998 Ford Explorer from Mike on 10/08/2012," and that Corn actually "came in on October 08, 2012" to purchase the vehicle.[6]  (Doc. 89, Ex. 3.) Though he was not called at trial, the government listed Gianfilippo on its witness list. (Doc. 84.)

At sidebar after Corn objected, the government's attorney stated that he had not spoken with Gianfilippo and did not recall any documentation.   The Court accepts those representations and finds it likely counsel simply forgot about sheriff's report. But it was still incorrect for the government to suggest that the registration documents did not support Corn's argument that he purchased the vehicle after the October 6 robbery.

Still, the factors from <u>Davis</u> require the Court to view the misstatement in context.  On the first factor, the Court agrees that, standing alone, the inaccurate suggestion that the vehicle registration document was ambiguous may be misleading to the jury.  In his motion, Corn argues that this misstatement prejudiced him by inviting the jury to speculate that David Kennedy had seen the Explorer at the scene

---

[6] As the report was not introduced at trial, the Court only considers it for purposes of determining whether the government's statements were intentionally false or misleading, not in evaluating the sufficiency of the evidence at trial.

of the October 6 robbery after all.   (Doc. 89 at 8.)

But the government never went so far.   In fact, the government took a step in the opposite direction when, moments before the misstatement, it acknowledged that "[Kennedy] didn't see Mr. Corn's SUV.  He wasn't driving that SUV, if that DMV thing is correct there and Mr. Kennedy's testimony is correct in what he saw, that it actually was a white decal."   (Id. at 3.)   Contrary to Corn's assertions in his motion, the government never argued that Kennedy saw the Explorer.

Instead, the government's argument in focusing on the vehicle in its closing was that Kenneth Bellido's identification of the vehicle and the registration document "helps narrow the pool of possible suspects" to Corn alone, which in turn bolsters the identification testimony of Corn by Kennedy and the other eyewitnesses.   (Doc. 89 at 2.)   So, while the government's later argument about potential ambiguity in the registration document was incorrect, it was an isolated misstatement with only mild prejudice to Corn.

As for whether the misstatement was deliberate, the government certainly made the statement on purpose in an effort to rebut the point made in Corn's closing argument that he did not own the Explorer at the time of the October 6 robbery, so Kennedy could not have seen that vehicle.   But as noted above, while the government should have known that the vehicle registration document was not ambiguous, at least in the manner it suggested, its brief foray into the topic was, in the Court's judgment, due to a memory lapse, not an intentional falsehood.

For the final factor from Davis, the Court considers the government's

14

misstatement in light of the strength of the proof of Corn's guilt.   As discussed with respect to Corn's motion for judgment of acquittal, identification testimony was a crucial component of the government's case.   The government's brief suggestion there may be ambiguity in the registration document was an attempt to counter Corn's legitimate attacks on the reliability of at least Kennedy's testimony.   But the vehicle identification was not the government's primary evidence.   Moreover, the government's other attempts to rebut Corn's defense were within the bounds of valid argument.   The government's one invalid suggestion does not so outweigh the rest of the proof of guilt such that a new trial is appropriate.

### 2.   **Weight of the Evidence**

Finally, Corn also argues that a new trial is warranted due to the insufficiency of the evidence of his guilt for the same reasons set forth in his motion for judgment of acquittal.   (Doc. 89 at 8-9.)   Though the standards of review are different for each motion, the Court nevertheless reaches the same conclusion.   After reviewing the evidence presented at trial, the Court find that it does not so preponderate against the verdict as to render the verdict a miscarriage of justice.   The motion for new trial is due to be denied for this reason, as well.

Accordingly, it is hereby **ORDERED** that Defendant's Renewed Motion for Judgment of Acquittal (Doc. 88) and Motion for New Trial (Doc. 89) are **DENIED**.

**DONE AND ORDERED** at Jacksonville, Florida this 8th day of August, 2014.

TIMOTHY J. CORRIGAN
United States District Judge

bjb.
Copies:

Jay Carl Taylor, Esq., AUSA
Susan Good Yazgi, Esq.
U.S. Probation
U.S. Pretrial Services
U.S. Marshals Service
Defendant