# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

JOHN E. CORN, JR.,

        Petitioner,

vs.                           Case No.:    3:15-cv-1408-J-32JRK
                                                     3:13-cr-100-J-32JRK

UNITED STATES OF AMERICA,

        Respondent.

_____/

## ORDER

Petitioner John Corn, Jr. was found guilty after a jury trial of a robbery spree, including one where he brandished a firearm. This case is before the Court on Petitioner John Edwin Corn, Jr.'s Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1, Motion to Vacate)[1] and Memorandum of Law in Support (Civ. Doc. 2-1, Memorandum). The United States has responded (Civ. Doc. 7, Response), and Petitioner has replied (Civ. Doc. 8, Reply). Petitioner also filed three motions for leave to amend (Civ. Doc. 14, Civ. Doc. 15, Civ. Doc. 22), to which the United States has responded as well (Civ. Doc. 19, Civ. Doc. 20; Civ. Doc. 31).[2]

---

[1] Citations to the record in the underlying criminal case, <u>United States vs. John Edwin Corn, Jr.</u>, No. 3:13-cr-100-J-32JRK, will be denoted as "Crim. Doc. __." Citations to the record in the civil § 2255 case, No. 3:15-cv-1408-J-32JRK, will be denoted as "Civ. Doc. __." The Court refers to the page numbers designated at the top of each page by CM/ECF.

[2] Petitioner also filed replies to the United States' responses to the motions for leave to amend (Civ. Doc. 23; Civ. Doc. 24; Civ. Doc. 33), but the Court did not grant Petitioner leave to file those replies. As such, those replies will be stricken pursuant to Rule 3.01(c), Local Rules, United States District Court, Middle District of Florida.

Several of Petitioner's claims merely rehash issues decided against him when the Court denied his motion for judgment of acquittal (Crim. Doc. 88) and motion for new trial (Crim. Doc. 89). (Crim. Doc. 98, Order Denying Post-Trial Motions). Under Rule 8(a) of the Rules Governing Section 2255 Proceedings, the Court has determined that an evidentiary hearing is not necessary to decide the petition. See Rosin v. United States, 786 F.3d 873, 877 (11th Cir. 2015) (an evidentiary hearing on a § 2255 motion is not required when the petitioner asserts allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming that the facts he alleges are true, he still would not be entitled to any relief). For the reasons set forth below, Petitioner's request for § 2255 relief is due to be denied.

## I. Background

The Court incorporates the following background from the Order denying Petitioner's post-trial motions:

> On May 16, 2013, a grand jury returned an indictment against Defendant John Edwin Corn, Jr., charging him with two counts of robbery in violation of the Hobbs Act, 18 U.S.C. § 1951(a) (one of which was later dismissed), two counts of attempted robbery, and one count of possessing and brandishing a firearm in furtherance of an attempted robbery in violation of 18 U.S.C. § 924(c)(1)(A)(ii). (Doc. 1–1). The government alleged that, in the span of approximately two weeks in October 2012, the defendant robbed or attempted to rob three Publix supermarkets and brandished a pistol during one failed attempt. According to the government, Corn robbed $7,224.26 from a Publix in Palm Harbor, Florida [near Tampa] on October 6, 2012, then unsuccessfully attempted to rob a Publix in Orlando, Florida on October 13, 2012 and a Publix in Jacksonville, Florida on October 21, 2012. Corn denied the charges, and the case went to trial.
>
> Along with other evidence, the government called eight eyewitnesses to the robbery and attempted robberies in its case-in-chief, seven of whom,

to varying degrees, identified Corn as the robber. Corn challenged the reliability of these identifications (and the other evidence) on cross examination and, at the close of the government's case, moved for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. The Court reserved ruling at that time pursuant to Rule 29(b).

Then, in his case, Corn presented two law enforcement witnesses who testified that certain individuals other than Corn were initially suspected of the Orlando attempted robbery. After Corn rested his case, the Court again reserved ruling on the motion for judgment of acquittal. The government presented no rebuttal evidence. The jury's verdict was guilty on Counts One through Four of the Indictment. (Doc. 86.) On May 27, 2014, the Court adjudicated Corn guilty of these counts. (Doc. 87).

(Crim. Doc. 98 at 1-3) (footnotes omitted).

After the trial, Petitioner renewed his motion for judgment of acquittal under Federal Rule of Criminal Procedure 29. (Crim. Doc. 88). "The crux of Corn's argument … [was] that the identification evidence forming the basis of the government's case was insufficient to support conviction." (Crim. Doc. 98 at 5) (citing Crim. Doc. 88). "Corn contend[ed] that the various eyewitness identifications, both inside and outside of court, are unreliable and that the video evidence of the robberies does not limit the possible suspects to Corn alone." (Id. at 5-6) (citing Crim. Doc. 88 at 1-4).

The Court noted that "seven of the eight eyewitnesses identified Corn as the robber, with varying degrees of certainty, though none of them had identified him in any photo spread before trial." (Crim. Doc. 98 at 6). As the Court recognized, the eyewitnesses initially gave divergent descriptions of the robber:

Their descriptions of the robber to the police after the incidents ranged in height from 5′3″ to 5′9″ and included recollections that he was "some skinny kid" in his twenties or a man in his mid-forties. At trial, a few of the witnesses testified that the robber had a "lean," "hunch," or "dip" in his shoulder or neck, though it is mentioned in only one of the witnesses' statements to the police. The witnesses described the various outfits or

> disguises the robber wore, including a cap, possibly a wig, and, at the
> October 6, 2012 robbery, [blotchy], black skin or face paint. Two
> witnesses to that robbery initially described the robber to the police as
> possibly a black man, though they each qualified that description at trial.
> The record reflects that Corn is a white man, was sixty-two years old at
> the time of the robbery, and has a noticeable shoulder deformity.

(Crim. Doc. 98 at 6-7). However, the government did not rest on eyewitness testimony alone. The government offered surveillance videos and still photographs of the incidents, several of which depicted a man with Petitioner's distinctive hunched shoulders committing the offenses. (See id. at 7); (see, e.g., Crim. Doc. 82, Gov't Exs. 1A – 1M, 2A – 2F, 3A – 3G). In addition, the government presented

> videos of Corn visiting a friend at a local prison facility in Jacksonville a
> few days before and a few days after the Jacksonville robbery. The
> government also introduced the vehicle registration records for a 1998
> Ford Explorer owned by Corn. One witness, Kenneth Bellido, a manager
> at a Publix store in Winter Springs, Florida, testified that, when Corn
> entered the Winter Springs store on November 8, 2012, Bellido
> recognized Corn from a BOLO circulated by Publix. Bellido then saw
> Corn leave in a vehicle and was able to remember the vehicle's license
> plate number when the police arrived. The registration documents and
> the testimony of the responding officer linked that plate number to Corn's
> 1998 Ford Explorer. The government also called Officer M.Z. McNamee
> of the Jacksonville Sheriff's Office, who testified that she pulled Corn
> over in the same vehicle in Jacksonville on October 20, 2012, placing him
> in Jacksonville the day before the Jacksonville Publix was robbed. The
> government did not present any fingerprint or other forensic evidence
> tying Corn to the robberies.

(Crim. Doc. 98 at 7).

The Court ruled that "a reasonable jury could have found Corn guilty beyond a reasonable doubt" in light of the evidence. (Id. at 8). The Court acknowledged "there were potential discrepancies and concerns about the accuracy of the eyewitness testimony." (Id.). However, "those issues were put directly before the jury," which still

found Petitioner guilty. (Id.). A reasonable jury could have considered the identification testimony in conjunction with the videos, photographs, and the jury's own observation of Petitioner throughout the trial. (Id. at 8-9). The Court concluded that

> Corn, through his able counsel, rightfully probed the accuracy of the evidence and raised legitimate questions for the jury to consider. However, it was not unreasonable for the jury to conclude that the evidence proved beyond a reasonable doubt that it was Corn who robbed the Palm Harbor Publix and attempted to rob the Publix stores in Orlando and Jacksonville.

(Crim. Doc. 98 at 9). Thus, the Court denied the motion for judgment of acquittal.[3]

In addition to moving for judgment of acquittal, Petitioner moved for a new trial under Rule 33 based on alleged government misconduct and the weight of the evidence. (Crim. Doc. 89).

> Corn's primary argument … [was] that the government made certain statements during closing argument and rebuttal that it knew were false in order to mislead the jury into believing that Corn's 1998 Ford Explorer had been at the scene of the October 6, 2012 robbery [of the Palm Harbor Publix]. (Doc. 89 at 1–8.) Corn argues that the government knew Corn had not acquired the vehicle until two days later, so it was improper for the government to suggest otherwise during its rebuttal argument. (Id. at 7–8.) Corn contends that, given the importance to the government's case of Kenneth Bellido's identification of Corn's vehicle on November 8, 2012, these supposed misstatements presented the jury with "a distorted picture of the realities" of the case, necessitating a new trial. (Id. at 5–8.)

(Crim. Doc. 98 at 11). Specifically, the prosecutor's misstatement concerned the vehicle

---

[3] In the motion for judgment of acquittal, Petitioner also argued that the government had not presented sufficient evidence of a connection to interstate commerce or that he used a firearm, but the Court rejected those arguments as well. (Id. at 9-10).

registration report for Petitioner's Ford Explorer. The registration stated that the vehicle had an acquisition date of October 8, 2012, two days after the robbery of the Palm Harbor Publix. The prosecutor suggested that the acquisition date might have referred to the date on which Petitioner acquired the title, not the date on which he acquired the vehicle itself. (Crim. Doc. 118, Trial Transcript Vol. III at 54). Petitioner's counsel immediately objected that the prosecutor was "making arguments from the evidence that he knows is not true." (Id.). The Court ordered the government to move on and the government did so. (See id. at 54-55).

The Court found that the government's assertion about the meaning of the acquisition date was, in fact, a misstatement. (Crim. Doc. 98 at 11). A sheriff's report established that Petitioner acquired the vehicle itself, not merely the title, on October 8, 2012. (Id. at 13). Nevertheless, the Court found that the misstatement was due to a simple memory lapse. (Id. at 13, 14). The Court rejected Petitioner's argument that the "misstatement prejudiced him by inviting the jury to speculate that David Kennedy had seen the Explorer at the scene of the October 6 robbery after all." (Id. at 13-14).

> In fact, the government took a step in the opposite direction when, moments before the misstatement, it acknowledged that "[Kennedy] didn't see Mr. Corn's SUV, if that DMV thing is correct there and Mr. Kennedy's testimony is correct in what he saw, that it actually was a white decal." Contrary to Corn's assertions in his motion, the government never argued that Kennedy saw the Explorer.

(Id. at 14) (internal citation omitted). The Court added that the vehicle registration was not the government's primary evidence, and determined that the isolated misstatement did "not so outweigh the rest of the proof of guilt such that a new trial

6

[was] appropriate." (Id.). Accordingly, the Court denied the motion for a new trial.

Shortly after denying the post-trial motions, the Court sentenced Petitioner to a term of 324 months in prison. (Crim. Doc. 105, Judgment). The sentence consisted of concurrent terms of 240 months in prison as to Counts One, Two, and Three (one count of Hobbs Act robbery and two counts of attempted Hobbs Act robbery), followed by a mandatory consecutive term of 84 months in prison as to Count Four (brandishing a firearm in furtherance of a crime of violence under 18 U.S.C. § 924(c)). (Id.).

Petitioner appealed the judgment, challenging only his § 924(c) conviction. Petitioner argued there was insufficient evidence that Petitioner brandished an actual firearm. United States v. Corn, 608 F. App'x 900, 901 (11th Cir. 2015). The Eleventh Circuit held that the testimony of witness Vanessa Giles was sufficient to allow the jury to "draw a reasonable inference that Defendant brandished a firearm and that it was a real gun, as required by § 921(a)(3)(A)." Id. at 902. Thus, the court rejected Petitioner's appeal and affirmed his conviction and sentence.

Petitioner timely filed this Motion to Vacate. Petitioner raises four grounds of trial court error or government misconduct in the Motion to Vacate itself, and adds claims of ineffective assistance of counsel in the Memorandum. Petitioner also filed three motions for leave to amend. In the First Motion for Leave to Amend, Petitioner seeks only to add page citations in support of the Motion to Vacate. In the Second Motion for Leave to Amend, Petitioner seeks to add a claim that his § 924(c) sentence is illegal in light of the Supreme Court's decision in Johnson v. United States, 135 S. Ct. 2551 (2015). Finally, in the Third Motion for Leave to Amend, Petitioner seeks to

expand upon his claims of government misconduct and ineffective assistance of counsel. The Court discusses each of the claims below.

## II. Law

### A. 28 U.S.C. § 2255

Under Title 28, United States Code, Section 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 permits such collateral challenges on four specific grounds: (1) the imposed sentence was in violation of the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C §2255(a) (2008). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamental as to cause a complete miscarriage of justice will warrant relief through collateral attack. United States v. Addonizio, 442 U.S. 178, 184-86 (1979). A petitioner's challenge to his sentence based on a Sixth Amendment claim of ineffective assistance of counsel is normally considered in a collateral attack. United States v. Teague, 953 F.2d 1525, 1534 n. 11 (11th Cir. 1992).

### B. Ineffective Assistance of Counsel

To succeed on a claim of ineffective assistance of counsel, a petitioner must show both (1) that counsel's performance was deficient, and (2) that as a result of counsel's deficient performance, the petitioner suffered prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). In determining whether counsel performed deficiently, the Court adheres to the standard of reasonably effective assistance. Weeks v. Jones, 26

F.3d 1030, 1036 (11th Cir. 1994). The petitioner must show, in light of all the circumstances, that counsel's performance fell outside the "wide range of professionally competent assistance." <u>Id.</u> To show that counsel's deficient performance prejudiced the defendant, the petitioner must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. <u>Id.</u> at 1036-37 (citing <u>Strickland</u>, 466 U.S. at 694). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. <u>Strickland</u>, 466 U.S. at 694. In determining whether a petitioner has met the two prongs of deficient performance and prejudice, the Court considers the totality of the evidence. <u>Id.</u> at 695. However, because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." <u>Id.</u> at 697; <u>see also</u> <u>Wellington v. Moore</u>, 314 F.3d 1256, 1261 n. 1 (11th Cir. 2002) ("We need not discuss the performance deficiency component of [petitioner's] ineffective assistance claim because failure to satisfy the prejudice component is dispositive.").

### C. Procedural Default

"Courts have long and consistently affirmed that a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal." <u>Lynn v. United States</u>, 365 F.3d 1225, 1232 (11th Cir. 2004) (citing <u>United States v. Frady</u>, 456 U.S. 152, 165 (1982)). "Under the procedural default rule, 'a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding.'" <u>McKay v.</u>

9

<u>United States</u>, 657 F.3d 1190, 1196 (11th Cir. 2011) (quoting <u>Lynn</u>, 365 F.3d at 1234).

"This rule generally applies to all claims, including constitutional claims." <u>Lynn</u>, 365

F.3d at 1234 (citing <u>Reed v. Farley</u>, 512 U.S. 339, 354 (1994)).[4]

A petitioner may avoid a procedural default either by showing (1) cause for and

actual prejudice from the default, or (2) that "a constitutional violation has probably

resulted in the conviction of one who is actually innocent." <u>Id.</u> (quoting <u>Murray v.</u>

<u>Carrier</u>, 477 U.S. 478, 496 (1986)). With respect to "cause and prejudice," "to show

cause for procedural default, [a petitioner] must show that some objective factor

external to the defense prevented [him] or his counsel from raising his claims on direct

appeal and that this factor cannot be fairly attributable to [the petitioner's] own

conduct." <u>Id.</u> at 1235 (citing <u>Smith v. Jones</u>, 256 F.3d 1135, 1145 (11th Cir. 2001)).

Ineffective assistance of counsel may constitute cause for a procedural default, but

only if the ineffective assistance claim has merit. <u>United States v. Nyhuis</u>, 211 F.3d

1340, 1344 (11th Cir. 2000). Petitioner must also show that "actual prejudice" resulted

from the claim not being raised on direct appeal. <u>Lynn</u>, 365 F.3d at 1234 (citing

<u>Bousley v. United States</u>, 523 U.S. 614, 622 (1998)). The second exception, actual

innocence, "is exceedingly narrow in scope as it concerns a petitioner's 'actual'

innocence rather than his 'legal' innocence." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171

(11th Cir. 2001) (citations omitted). "To show actual innocence of the crime of

---

[4]     However, claims of ineffective assistance of counsel need not be raised on direct
appeal. <u>Massaro v. United States</u>, 538 U.S. 500, 508-09, 123 S. Ct. 1690, 155 L. Ed. 2d
714 (2003). Thus, for federal prisoners seeking relief under § 2255, claims of ineffective
assistance are essentially exempt from the procedural default rule.

conviction, a movant 'must show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt' in light of the new evidence of innocence." <u>McKay</u>, 657 F.3d at 1196 (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)). The actual innocence exception is supposed to "remain 'rare' and … only be applied in the 'extraordinary case.'" <u>Schlup</u>, 513 U.S. at 321.

## III. Discussion

### A. Ground One: Eyewitness Identifications

First, Petitioner argues that the Court erred by denying his renewed motion for judgment of acquittal. (Civ. Doc. 1 at 4). Petitioner reargues at length that the eyewitnesses' identifications were inconsistent and that their testimony was unreliable. (Civ. Doc. 2-1 at 3-18). In the Memorandum, Petitioner also contends that three witnesses' in-court identifications – those of Lisa Holley, David Kennedy, and Cesar Redaja – were tainted by an unduly suggestive out-of-court identification procedure. (Civ. Doc. 2-1 at 12-18). Petitioner further claims that three other witnesses' in-court identifications – those of Rhonda Brown, Maxwell Carillo, and Vanessa Giles – lacked an "independent basis." (<u>Id.</u> at 16). However, Petitioner fails to explain how Brown's, Carillo's, and Giles's identifications were tainted by an impermissible out-of-court identification procedure.[5]

---

[5]     In fact, Brown viewed two photospreads but did <u>not</u> identify any suspect based on either spread. (Crim. Doc. 117 at 16). Likewise, Giles viewed three photospreads, including one that contained Petitioner's photo, but did not identify a suspect. (Crim. Doc. 117 at 106-08; Crim. Doc. 118 at 33). Carillo's testimony gave no indication whether he viewed a photospread. (<u>See</u> Crim. Doc. 116 at 226-49).

These claims are procedurally defaulted. Petitioner did not appeal the Court's decision to deny the renewed motion for judgment of acquittal. Petitioner also never raised any objection, either in this Court or on direct appeal, that Lisa Holley's, David Kennedy's, Cesar Redaja's, Rhonda Brown's, Maxwell Carillo's, or Vanessa Giles's in-court identifications were tainted by an unduly suggestive out-of-court identification procedure.[6] Because Petitioner could have raised these issues before this Court or on direct appeal, he has procedurally defaulted them. See Lynn, 365 F.3d at 1234.

Petitioner does not invoke the cause-and-prejudice exception. However, he alleges in one conclusory sentence that he did not raise these issues on appeal because appellate counsel was ineffective. (Civ. Doc. 1 at 4). Petitioner then points the reader to his Memorandum, but the Memorandum does not elaborate on how counsel was ineffective for not briefing these particular issues. (See Civ. Doc. 1 at 4; Civ. Doc. 2-1 at 42-47).[7] Rather, the Memorandum deals with other, unrelated ineffective assistance claims, which are addressed in Ground Five.

Ineffective assistance of counsel may constitute "cause" to excuse a procedural

---

[6] Petitioner did move to exclude the identification testimony of one witness, Kenneth Bellido, on the ground that his in-court identification was tainted by an impermissibly suggestive out-of-court identification procedure. (Crim. Doc. 40). The Court granted the motion in part and denied it in part. (See Crim. Doc. 59, Report and Recommendation; Crim. Doc. 74, Order Adopting Report and Recommendation). The Court determined that while the out-of-court identification was inadmissible, it did not taint Bellido's in-court identification because the in-court identification had a sufficiently independent basis given Bellido's prolonged opportunity to observe the robber at a relatively close distance. (Crim. Doc. 59 at 14-22).

[7] Such is also the case with Petitioner's allegation that appellate counsel was ineffective because she failed to brief the issues raised in Grounds Two through Four. (See Civ. Doc. 1 at 5-9; Civ. Doc. 2-1 at 42-47).

default, but only if the ineffective assistance claim has merit. <u>Nyhuis</u>, 211 F.3d at 1344. There is a "'strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" <u>Chandler v. United States</u>, 218 F.3d 1305, 1314 (quoting <u>Strickland</u>, 466 U.S. at 689-90). Appellate counsel has no duty to raise every non-frivolous issue and may reasonably weed out weaker (albeit meritorious) arguments. <u>See</u> <u>Philmore v. McNeil</u>, 575 F.3d 1251, 1264 (11th Cir. 2009). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of counsel be overcome." <u>Smith v. Robbins</u>, 528 U.S. 259, 288 (2000) (quoting <u>Gray v. Greer</u>, 800 F.2d 644, 646 (7th Cir. 1986)). It is "possible to bring a <u>Strickland</u> claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent." <u>Id.</u>

Petitioner does not attempt to explain how the eyewitness identification issues were "clearly stronger than those presented" on appeal, <u>Smith</u>, 528 U.S. at 288, or why the Eleventh Circuit would have ruled in his favor on these issues (<u>see</u> Civ. Doc. 1 at 4; Civ. Doc. 2-1 at 42-47). Given the "strong presumption" that counsel made all significant decisions in the exercise of reasonable judgment, <u>see</u> <u>Chandler</u>, 218 F.3d at 1314, undeveloped allegations like Petitioner's are insufficient to overcome that presumption, <u>Tejada v. Dugger</u>, 941 F.2d 1551, 1559 (11th Cir. 1991). Therefore, Petitioner's bare allegation that appellate counsel was ineffective for not briefing the claims alleged in Ground One is not enough to establish cause for the default.

Petitioner does not specifically invoke the actual innocence exception, but he

insists that the eyewitnesses misidentified him, which the Court liberally construes as raising a claim of actual innocence. Petitioner cannot satisfy the test for actual innocence because he must "support the actual innocence claim 'with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" Arthur v. Allen, 452 F.3d 1234, 1245 (11th Cir.), opinion modified on reh'g, 459 F.3d 1310 (11th Cir. 2006) (quoting Schlup, 513 U.S. at 324). However, Petitioner does not point to any such "new" evidence of innocence. (See Civ. Doc. 1 at 4; Civ. Doc. 2-1 at 3-18). There is nothing new about the fact that the eyewitnesses offered inconsistent descriptions of the robber. Nor is there anything new about the identification procedures that police employed during their investigation. Yet, even if the out-of-court identification procedures used with Holley, Kennedy, and Redaja could be considered "new" evidence of innocence, and even if their identifications were excluded, Petitioner has not shown it is "more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Schlup, 513 U.S. at 327. Several other witnesses – Rhonda Brown, Vanessa Giles, and Maxwell Carillo – identified Petitioner as the person who attempted to rob two of the Publix supermarkets. Another witness, Kenneth Bellido, identified Petitioner from a BOLO report and by his license plate. In addition, there were photographs or surveillance footage of each incident, as well as other evidence putting Petitioner in Jacksonville, Florida around the same time the Jacksonville Publix was robbed. Indeed, during closing argument, the prosecutor himself cautioned the jury "to be very careful with eyewitness identifications" (Crim. Doc. 118 at 6), and

instead stressed the similarities between Petitioner and the person captured in the still photographs and surveillance footage (id. at 4-6). A reasonable jury could have examined Petitioner himself (who has a distinctive shoulder deformity), compared him to the person depicted in the surveillance images, and decided he was the perpetrator. As such, Petitioner cannot satisfy the test for actual innocence so as to avoid the procedural default. Petitioner therefore cannot obtain relief on Ground One.

### B. Ground Two

#### 1. Alleged Government Misconduct, Trial Court Error, and Ineffective Assistance Concerning the Testimony of David Kennedy and Rhonda Brown

Petitioner argues that the prosecutor improperly bolstered the testimony of two eyewitnesses – David Kennedy and Rhonda Brown – by implying that evidence outside of the record supported their testimony. (Civ. Doc. 1 at 5; Civ. Doc. 2-1 at 19-24). According to Petitioner, the prosecutor falsely asserted in closing argument that Kennedy and Brown saw Petitioner's green Ford Explorer leaving the scene of the Publix supermarkets in Palm Harbor and Jacksonville, respectively, when in fact they only testified to seeing a dark-colored SUV leaving the scene. (See Crim. Doc. 116 at 61, 261). Petitioner also contends, like he did in the motion for new trial (Crim. Doc. 89), that during rebuttal argument, the prosecutor misled the jury about the meaning of the acquisition date in the Explorer's vehicle registration, so as to suggest that Kennedy could have seen the green Explorer (see Civ. Doc. 2-1 at 19-24).

Petitioner goes on to claim that after the Court told the prosecutor to move on from his argument about the acquisition date, the prosecutor continued the misleading

line of argument anyway. (Id. at 20). Petitioner claims that the Court erred by failing to admonish the prosecutor (id. at 20, 24) and that counsel was ineffective for failing to object to the prosecutor continuing the argument (id. at 20). Petitioner further claims that the Court erred by denying his motion for a new trial based on government misconduct. (Id. at 24).

These claims are procedurally defaulted to the extent Petitioner argues that the prosecutor misstated the evidence during closing argument, that the Court should have given a curative instruction, or that the Court erred by denying the motion for a new trial. Petitioner could have raised these issues on direct appeal but he did not. As such, he cannot raise these arguments in a § 2255 motion. McKay, 657 F.3d at 1196; Lynn, 365 F.3d at 1234. Petitioner's conclusory allegation that counsel was ineffective for failing to brief these issues on direct appeal is insufficient to establish cause to excuse the default. (See Civ. Doc. 1 at 5). Petitioner does not invoke the actual innocence exception either. (See Civ. Doc. 1 at 5; Civ. Doc. 2-1 at 19-24). As such, Petitioner cannot avoid the default and he is not entitled to relief on these claims.[8]

To the extent Petitioner claims trial counsel failed to object when the prosecutor did not discontinue his argument about the acquisition date, the record refutes the claim. Counsel promptly objected when the prosecutor suggested that the Explorer's

---

[8] Moreover, as the Court previously determined, the prosecutor's misstatement about the Explorer's vehicle registration was not intended to deceive. (Crim. Doc. 98 at 13-14). The Court explained that the prosecutor did not invite the jury to speculate that Kennedy had seen the Explorer because he "took a step in the opposite direction" when he acknowledged that Kennedy did not in fact see the green Explorer. (Id. at 14). Besides, the isolated misstatement did "not so outweigh the rest of the proof of guilt such that a new trial is appropriate." (Id. at 15).

acquisition date could have referred to the acquisition of title, arguing that the prosecutor was "making arguments from the evidence … that he knows is not true." (Crim. Doc. 118 at 54). The Court directed the prosecutor "to start talking about something else" and the prosecutor did so. (See id. at 55). (See also Crim. Doc. 98 at 12) ("Corn objected immediately thereafter; at sidebar, the Court instructed the government to move on; and the government did so."). Contrary to Petitioner's claim, the transcript shows that the prosecutor discontinued any argument about the term "acquisition date" being ambiguous. (Crim. Doc. 118 at 55-56). Thus, counsel was not ineffective for not objecting because the prosecutor discontinued the argument.

### 2. Kenneth Bellido's Testimony

Petitioner also argues that the prosecutor offered false identification testimony through witness Kenneth Bellido. (See Civ. Doc. 2-1 at 24-29). Bellido, who was an assistant store manager at a Publix in Winter Springs, Florida, was a witness to an uncharged incident that occurred on November 8, 2012. Bellido testified that on that date, a man entered his store who matched the depiction of a suspect in a "be-on-the-lookout" report, or BOLO, which he had received in late October 2012. (Crim. Doc. 116 at 197-98). Bellido testified that as part of his duties as an assistant manager, he receives and reviews BOLOs from Publix's loss prevention department. (Id. at 195-96). In late October 2012, Bellido received a BOLO concerning a robbery in the Tampa area. (Id. at 197). The BOLO contained a description and photograph of a suspect who was "strong-arming managers" with a gun. (Id.). Bellido said that the appearance of the man who entered his store on November 8, 2012 "was spot on to what the BOLO

had as the picture of the person that was perpetrating crimes in the area." (Id. at 198).

Bellido recalled that the man "had a dip in his shoulder" that "was very distinct." (Id. at 199). When the man asked if Bellido was the manager, Bellido responded affirmatively before excusing himself for a moment. (Id. at 200).[9] Bellido went to his office, where he called the police while keeping an eye on the man. (Id. at 200-01). When Bellido emerged from his office, the man had left the store, but Bellido followed him to the parking lot. There, Bellido saw him get into a dark green SUV. (Id. at 201-02). Bellido was able to get the vehicle's tag number (id. at 202), which later revealed that the vehicle was registered to Petitioner (see id. at 123-26; Crim. Doc. 117 at 23-25; Govt' Ex. 6). Bellido also identified Petitioner in court as the person who entered the store. (Crim. Doc. 116 at 198). According to the government's closing argument, Bellido's identification of Petitioner's vehicle by the tag number was important to the prosecution, because it arguably narrowed the universe of suspects down to Petitioner alone. (See Crim. Doc. 118 at 13).

Petitioner claims that Bellido falsely identified him and that the prosecutor presented Bellido's testimony knowing it was false. The gist of Petitioner's argument seems to be that Bellido could not have identified Petitioner based on the BOLO from the Tampa-area robbery because a police report from that same robbery described the suspect as 5'4" tall, in his 20's, and wearing a red wig, whereas Bellido offered a

---

[9]     That the man asked if Bellido was a manager held some significance because that was consistent with the robber's modus operandi. The robber's habit was to ask for a manager before indicating the presence of a gun and ordering the manager to hand over money. (Compare Crim. Doc. 116 at 54-55 [testimony of David Kennedy]; id. at 150 [testimony of Vanessa Giles]; id. at 252 [testimony of Rhonda Brown]).

different description. (Civ. Doc. 2-1 at 26). Petitioner also claims, without offering any evidence, that contrary to Bellido's testimony, Bellido did not review a Publix BOLO and therefore could not have recognized Petitioner based upon it. (Id. at 27).

In Giglio v. United States, the Supreme Court held that "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with" due process. 405 U.S. 150, 153 (1972). A Giglio error requires that (1) the prosecutor knowingly used false testimony or failed to correct false testimony on discovery, and (2) there is "any reasonable likelihood that the false testimony could have affected the judgment." Davis v. Terry, 465 F.3d 1249, 1253 (11th Cir. 2006) (quotations and ellipsis omitted). However, the fact that one witness's testimony is contrary to another witness's account "does not amount to a showing that the government knowingly presented false testimony." United States v. Michael, 17 F.3d 1383, 1385 (11th Cir. 1994); see also Price v. Johnston, 334 U.S. 266, 288 (1948), overruled on other grounds by McCleskey v. Zant, 499 U.S. 467 (1991)) ("A mere claim that a witness gave inconsistent testimony is not enough to charge the prosecution's knowing use of false testimony."). Inconsistent testimony may innocently result from another witness's recollection simply being incorrect. See Michael, 17 F.3d at 1385.

Petitioner procedurally defaulted his claim that the prosecution used Bellido to obtain false identification testimony. Bellido's testimony and the documents on which Petitioner bases the Giglio claim were available to him before or during the trial. Nothing suggests that the Giglio claim depends on newly discovered evidence that surfaced only after trial. Thus, Petitioner could have argued the issue in his motion

for a new trial or on appeal, but he did neither. As such, he may not raise this issue now. McKay, 657 F.3d at 1196; Lynn, 365 F.3d 1234.

In any event, Petitioner's claim fails in substance because it is not a true Giglio claim: he offers no proof that Bellido lied or that the prosecutor offered his testimony knowing it to be false. Petitioner primarily bases the Giglio claim on the fact that Bellido's description of the robber was inconsistent with the description of the suspect from the Tampa-area robbery. (Civ. Doc. 2-1 at 26). But discrepancies between witnesses' accounts do not establish a Giglio violation. Michael, 17 F.3d at 1385; see also Price, 334 U.S. at 288. Besides, the jury knew that the eyewitnesses had given inconsistent descriptions of the robber, but it still found Petitioner guilty beyond a reasonable doubt. That Bellido followed the suspect to the parking lot, obtained his vehicle's license tag number, and the tag number revealed Petitioner to be the vehicle's owner tends to confirm Bellido's independent in-court identification. Because nothing in the record suggests that the government knowingly elicited false testimony from Bellido, the claim fails on the merits.

## C. Ground Three: Fingerprint Testimony

Petitioner argues that the Court erred under Federal Rule of Criminal Procedure 16 and Federal Rules of Evidence 701 and 702 by allowing Detective T.A. Gagnon to testify at trial as a "fact witness." (Civ. Doc. 1 at 7; Civ. Doc. 2-1 at 31-38). Detective Gagnon testified that the evidence technicians could not recover Petitioner's fingerprints from the customer service counter at the Jacksonville Publix he was charged with attempting to rob. (Crim. Doc. 117 at 70-73). Detective Gagnon opined

that the technicians were unable to recover Petitioner's fingerprints because the customer service area has a large volume of traffic, which creates wear on the surface that makes it difficult to recover "latent prints of value." (Id.). The thrust of Petitioner's claim is that the Court failed to ensure Detective Gagnon was qualified to render an expert opinion about fingerprints. Petitioner also argues that the prosecutor made assertions in closing argument related to fingerprint evidence that were not based on the testimony. (Civ. Doc. 2-1 at 35-37).

These claims are procedurally defaulted. Petitioner could have raised these issues at trial or on appeal. He did not do so however. As such, he cannot raise those issues now in a § 2255 motion. McKay, 657 F.3d at 1196; Lynn, 365 F.3d at 1234.

While Petitioner asserts that he did not raise these issues on appeal because counsel was ineffective (Civ. Doc. 1 at 7), such a conclusory claim is not enough to overcome the procedural default. Additionally, appellate counsel could reasonably have decided not to challenge the ruling to allow Detective Gagnon to offer his expert opinion. (See Crim. Doc. 117 at 54-56). As such, Petitioner cannot overcome the procedural default and he is entitled to no relief on this claim.

## D. Ground Four: Improper Closing Argument

In Ground Four, Petitioner claims that the prosecutor made improper remarks during closing argument when he "discredited" defense counsel, misled the jury concerning witnesses' police reports, and misled the jury about Federal Rule of Evidence 803 (though he does not explain how). (Civ. Doc. 2-1 at 39-41). Petitioner claims that during closing argument, the prosecutor falsely suggested that the

witnesses' inconsistent descriptions of the robber "only c[a]me from Defense Counsel [Yazgi's] mouth," when in fact the inconsistent descriptions were contained in the police reports. (See id. at 41). At trial, defense counsel objected to the prosecutor's comment, but the Court overruled the objection. (Crim. Doc. 118 at 50). Petitioner adds that the Court erred by overruling defense counsel's objection. (Civ. Doc. 2-1 at 41).

As with several of the previous grounds, Petitioner has procedurally defaulted this claim because he failed to raise it on direct appeal. McKay, 657 F.3d at 1196; Lynn, 365 F.3d at 1234. Petitioner does not assert the actual innocence exception, and his conclusory claim that counsel was ineffective for not briefing the issue on appeal is insufficient to excuse the default. (See Civ. Doc. 1 at 9). As such, Petitioner is entitled to no relief on this claim.

### E. Ground Five: Ineffective Assistance of Counsel

In addition to the preceding grounds, Petitioner raises several subclaims of ineffective assistance of counsel. (Civ. Doc. 2-1 at 42-47). Because a defendant is not required to raise a claim of ineffective assistance on direct appeal, Massaro, 538 U.S. at 508-09, these claims are not procedurally defaulted.

#### 1. Whether Counsel Was Ineffective for Not Calling an Optometrist or Eye Expert to Testify

Petitioner claims that trial counsel was ineffective for not hiring an optometrist or other eye expert to testify that Petitioner had such poor vision that he could not see without wearing glasses. (Civ. Doc. 2-1 at 42-43). Because several of the witnesses testified the robber was not wearing eyeglasses, Petitioner contends that had the jury heard such expert testimony, the jury would have found he could not have committed

22

the offenses.

"Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978).[10] "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it." Dingle v. Sec'y, Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) (quotations omitted). Thus, "[t]he mere fact that other witnesses might have been available ... is not a sufficient ground to prove ineffectiveness of counsel." Waters, 46 F.3d at 1514. "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted) (cited by Estiven v. Sec'y, Dep't of Corr., No. 16-14056-D, 2017 WL 6606915, at *4 (11th Cir. Sep. 28, 2017) (order denying certificate of appealability)).

Petitioner provides nothing to support his claim that an optometrist or eye

---

[10]     Decisions of the former Fifth Circuit Court of Appeals that were issued on or before September 30, 1981 are binding in the Eleventh Circuit Court of Appeals. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981).

expert would have testified as he suggests. Petitioner can only speculate that an eye expert's testimony would have been favorable. However, "speculation that the missing witnesses would have been helpful" "is 'insufficient to carry the burden of a habeas corpus petitioner.'" <u>Johnson</u>, 256 F.3d at 1187 (quoting <u>Aldrich v. Wainwright</u>, 777 F.2d 630, 636 (11th Cir. 1985)). Because Petitioner's "self-serving speculation" about what an eye expert would have testified "will not sustain an ineffective assistance claim," <u>Ashimi</u>, 932 F.2d at 650, Petitioner's claim fails to show that counsel's decision not to call an eye expert was deficient or prejudicial.

Additionally, Petitioner ignores that his attorney adduced testimony that the robber was not wearing eyeglasses (<u>e.g.</u>, Crim. Doc. 116 at 46, 84, 111), and she argued that because Petitioner always wears glasses he could not have been the perpetrator (Crim. Doc. 118 at 47). The jury did not accept the argument. This claim therefore does not merit relief.

### 2. Whether Counsel Was Ineffective for Not Calling Evidence Technicians or Fingerprint Experts

Next, Petitioner argues that counsel was ineffective for not calling various evidence technicians or fingerprint experts to testify at trial. (Civ. Doc. 2-1 at 43-44). Petitioner contends the technicians would have testified that they were unable to recover Petitioner's fingerprints from any of the crime scenes. Petitioner asserts that had counsel called these witnesses, the jury would have acquitted him.

At trial, Detective Gagnon himself testified that the technicians were unable to identify Petitioner's fingerprints at any of the Publix supermarkets. (Crim. Doc. 117 at 72-73). Detective Gagnon explained that, in his opinion, it would be difficult to

recover quality latent fingerprints from a high-traffic area because of the wear created by the number of people touching the surfaces under inspection. (Id. at 70-73). During closing argument, Petitioner's counsel emphasized the fact that the technicians could not recover Petitioner's fingerprints (Crim. Doc. 118 at 47-48), but the jury convicted Petitioner nonetheless.

Given Detective Gagnon's testimony that the technicians did not recover Petitioner's fingerprints, additional testimony to the same effect would have been cumulative. Because counsel does not render ineffective assistance by not adducing cumulative testimony, Reaves v. Sec'y, Fla. Dep't of Corr., 872 F.3d 1137, 1157 (11th Cir. 2017) (collecting cases), counsel did not perform deficiently by not calling other technicians to testify that they could not identify Petitioner's fingerprints. Moreover, the jury was unconvinced by the fact that the technicians were unable to recover Petitioner's fingerprints, so there is not a reasonable probability that further testimony of the same nature would have changed the verdict.

### 3. Whether Counsel Was Ineffective for Not Obtaining or Introducing Certain Police Records

Petitioner also claims counsel was ineffective for not obtaining or introducing certain police records at trial. (Civ. Doc. 2-1 at 45-46). Specifically, Petitioner contends that counsel should have obtained and introduced (1) a police report in which witness David Kennedy described the suspect to the police as someone in his 20's, and (2) the recording of a 911 call in which witness Cesar Redaja described the suspect as a black male with a skin disorder. (Id. at 45). Petitioner suggests that had counsel introduced this evidence, it would have created a reasonable doubt of his guilt and caused the jury

to acquit him. (See id. at 46).

As for counsel not introducing Kennedy's police report, the claim lacks merit because such evidence would have been cumulative of Kennedy's own testimony. On cross-examination, Kennedy admitted that he initially described the suspect to police as being 5'4" and in his 20's. (Crim. Doc. 116 at 78). Kennedy thought that, "[b]ased upon his stature," the robber "was some skinny kid." (Id.). Thus, there was no need to introduce Kennedy's police report because he admitted giving a prior inconsistent description. Counsel emphasized Kennedy's prior inconsistent description during closing argument (Crim. Doc. 118 at 27-28), but the jury convicted Petitioner nonetheless. Under the facts of this case, counsel could reasonably have decided that introducing the police report would have been cumulative and unnecessary.

As for counsel's alleged failure to introduce the recording of Redaja's 911 call, the record refutes the claim. On cross-examination, counsel pressed Redaja about whether he described the robber as a black male during a call to 911. (Id. at 101-02). First, counsel used the 911 recording to refresh Redaja's recollection. (Id. at 102-04). Then, counsel introduced the 911 recording into evidence and published it to the jury. (Id. at 105-11). Contrary to Petitioner's claim, the record shows that counsel put Redaja's prior inconsistent description squarely before the jury, including through introduction of the 911 recording. Thus, the record contradicts Petitioner's claim.

### F.  Ground Six: Cumulative Error

At the end of the Memorandum, Petitioner contends he is entitled to relief based on cumulative error. (Civ. Doc. 2-1 at 46-47). Petitioner argues that the cumulative

effect of the errors alleged in the Motion to Vacate and Memorandum deprived him of a fair trial, in violation of his right to due process.

"The cumulative error doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of a constitutional right to a fair trial, which calls for reversal." United States v. Baker, 432 F.3d 1189, 1223 (11th Cir. 2005) (quotation omitted). However, where there is no error or only a single non-prejudicial error, there can be no cumulative error. United States v. Allen, 269 F.3d 842, 847 (11th Cir. 2001). The Court has determined that none of Petitioner's allegations of error has merit. Because Petitioner has shown no error, let alone a single error, he has no right to relief under the cumulative error doctrine. Id.

### G. First Motion for Leave to Amend

In the First Motion for Leave to Amend, Petitioner seeks leave only to add page citations in support of Grounds Two and Three. (Civ. Doc. 14). The United States does not oppose the motion. (Civ. Doc. 20). The First Motion for Leave to Amend is due to be granted, but it does not alter the Court's analysis.

### H. Second Motion for Leave to Amend

In the Second Motion for Leave to Amend (Civ. Doc. 15) and Addendum (Civ. Doc. 25), Petitioner seeks to add a claim that his conviction and sentence for brandishing a firearm in furtherance of a "crime of violence," under 18 U.S.C. § 924(c), is unconstitutional in light of Johnson, 135 S. Ct. 2551. Section 924(c) provides for a mandatory consecutive sentence for any person who uses a firearm during a crime of

violence or a drug-trafficking crime. 18 U.S.C. § 924(c)(1). For purposes of § 924(c), "crime of violence" means an offense that is a felony and:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Id., § 924(c)(3). The Eleventh Circuit refers to § 924(c)(3)(A) as the "use-of-force" clause and § 924(c)(3)(B) as the "risk-of-force" clause. United States v. St. Hubert, 909 F.3d 335, 344 (11th Cir. 2018). In Johnson, the Supreme Court held that language in the ACCA that resembled the "risk-of-force" clause was unconstitutionally vague. 135 S. Ct. at 2563. Petitioner claims that the "risk-of-force" clause is also vague in light of Johnson, and suggests that his predicate convictions for robbery and attempted robbery do not qualify as a "crime of violence" under the "use-of-force" clause.

This claim fails because the crime underlying Petitioner's § 924(c) conviction – the attempted Hobbs Act robbery alleged in Count Three (Crim. Doc. 1-1 at 3) – is a crime of violence under the use-of-force clause, § 924(c)(1)(A). In St. Hubert, the Eleventh Circuit held that the "predicate offense of attempted Hobbs Act robbery qualifies as a crime of violence under § 924(c)(3)(A)'s use-of-force clause, which remains unaffected by Johnson and Dimaya.[11]" 909 F.3d at 352. Thus, Petitioner's § 924(c) conviction does not implicate the "risk-of-force" clause or Johnson. While the

---

[11] Sessions v. Dimaya, — U.S. —, 138 S. Ct. 1204, 200 L. Ed. 2d 549 (2018).

Second Motion for Leave to Amend is due to be granted, the claim is due to be denied.[12]

## I.   Third Motion for Leave to Amend

In the Third Motion for Leave to Amend, Petitioner seeks leave to expand his claims of prosecutorial misconduct and ineffective assistance of counsel. (Civ. Doc. 22). The United States responds that the expanded claims lack merit. (Civ. Doc. 31). The Court assumes for the sake of argument that the claims relate back to the Motion to Vacate. Nonetheless, the expanded claims are due to be denied.

First, Petitioner expands on his claim that the government offered false testimony through witness Kenneth Bellido. (See Civ. Doc. 22 at 2-4).[13] Citing Exhibit III to his Motion to Vacate (Civ. Doc. 1-3), Petitioner claims that Bellido told Officer Flinn he identified Petitioner's vehicle based on the Publix BOLO. Petitioner claims Bellido must have lied because no vehicle was described in the BOLO. (Civ. Doc. 22 at 2). He further claims that the prosecutor must have known Bellido lied because the government possessed the documents that Petitioner alleges would support his assertion that Bellido testified falsely.

The claim fails for two separate reasons. First, just like Petitioner's original claim regarding Bellido's testimony, the claim is procedurally defaulted because it

---

[12]   A magistrate judge appointed Charles Truncale to replace the Federal Public Defender in representing Petitioner in any post-conviction proceeding based on the Supreme Court's holdings in Johnson and Welch. (Crim. Doc. 130; see also Crim. Doc. 129). Mr. Truncale never filed anything, presumably because he determined, as this Court does, that Petitioner does not have a viable claim based on Johnson.

[13]   Petitioner also rehashes arguments previously made about Bellido's testimony, which the Court will not readdress here.

could have been raised on direct appeal but Petitioner did not do so. See McKay, 657 F.3d at 1196; Lynn, 365 F.3d at 1234. Second, the record refutes the claim. Exhibit III does not reflect that Bellido told Officer Flinn that he identified Petitioner's vehicle based on the Publix BOLO. (Civ. Doc. 1-3). Rather, Exhibit III reflects that Bellido identified Petitioner himself based on the depiction contained in the BOLO, and that Bellido described the suspect's vehicle as a green Explorer based on personal observation. (Id. at 2). Because the record refutes Petitioner's claim, and because Petitioner offers no support for the assertion that the government knowingly offered false testimony, Petitioner is entitled to no relief on this ground.

Petitioner also adds a claim that the government knowingly offered false testimony through Detective Gagnon. (Civ. Doc. 22 at 10-11). Like the original claim concerning Detective Gagnon's testimony, Petitioner procedurally defaulted the claim by failing to present it on direct appeal. Moreover, Petitioner points to nothing to support the claim that the government presented false testimony through Detective Gagnon. As such, this claim does not merit relief.

Finally, Petitioner adds a claim that defense counsel gave ineffective assistance by failing to use certain documentary evidence or other witnesses to impeach David Kennedy, Vanessa Giles, Kenneth Bellido, and Rhonda Brown. For example, Petitioner argues that counsel should have introduced evidence that Kennedy initially identified a different suspect in a photospread (Civ. Doc. 22 at 9; Civ. Doc. 22-3), and that counsel should have investigated the sketch artist to whom Giles described the robber (Civ. Doc. 22 at 5). In essence, Petitioner argues that counsel should have done

more to question the witnesses' accuracy and reliability. This claim does not merit relief either.

"To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or what is prudent or appropriate, but only what is constitutionally compelled." Chandler, 218 F.3d at 1313 (internal quotation marks omitted) (citing Burger v. Kemp, 483 U.S. 776, 107 S. Ct. 3114, 3126, 97 L. Ed. 2d 638 (1987)). "The test for ineffectiveness is not whether counsel could have done more; perfection is not required. Nor is the test whether the best criminal defense attorneys might have done more. Instead the test is ... whether what they did was within the 'wide range of reasonable professional assistance.'" Waters, 46 F.3d at 1518 (en banc) (citations omitted).

The record reflects that defense counsel thoroughly impeached Kennedy, Giles, Bellido, and Brown concerning their eyewitness identifications. Counsel probed Kennedy about giving a prior inconsistent description of the assailant (Crim. Doc. 116 at 78), and questioned whether he could have accurately observed the robber given that the robber wore a disguise (see id. at 76-77). Although counsel did not introduce evidence that Kennedy selected a different suspect out of a photospread (see Civ. Doc. 22-3), she did obtain testimony from Detective Breneman (Crim. Doc. 117 at 98-103) and Detective Gorberg (id. at 104-16) that, based on witness interviews, investigators identified at least three suspects other than Petitioner. Counsel thus made the jury aware of the existence of other suspects, even if she did not introduce testimony that

Kennedy chose a different suspect in a lineup. With respect to Vanessa Giles, counsel elicited testimony that she failed to identify Petitioner as the suspect when presented with a photospread containing his picture. (Id. at 106-08). Counsel further cross examined Giles about her original description of the robber as a 5'6" man in his 40's with a medium build. (Crim. Doc. 116 at 180). (The record reflects that Petitioner was 62 at the time of the offenses, see Crim. Doc. 103 at 15 ¶ 73, and that he is 5'7" tall and weighs 130 pounds, id. at 16 ¶ 78). Counsel also questioned Giles about the fact that in court she testified the robber had a lean or a hunch, but she did not describe this feature to the police. (Id. at 180-85). Counsel was able to get Giles to admit she was not 100% sure Petitioner was the robber. (Id. at 186). With respect to Bellido, counsel questioned whether he adequately observed the suspect, and questioned whether he could accurately recall the suspect's appearance given that he became panicked when the suspect entered his store. (See id. at 210-21). Counsel also challenged Bellido's recollection based on the amount of time that had passed between the incident and the trial. (Id. at 221). And with respect to Brown, counsel cross-examined her about her previous description of the robber as being 5'8" or 5'9" and weighing 180 or 185 pounds. (Crim. Doc. 117 at 9-10, 14-15). Brown admitted that she too was not 100% sure Petitioner was the robber. (Id. at 14). With each witness, counsel suggested that he or she was only able to make an in-court identification because the courtroom environment is inherently suggestive of who the defendant is. (E.g., Crim. Doc. 116 at 80, 185-87, 208-10). During closing argument (Crim. Doc. 118 at 20-50), counsel urged the jury to be wary of eyewitness identification testimony,

reminding them that the witnesses were testifying a year and a half after the alleged offenses, and several had never identified Petitioner as the robber before trial (id. at 20-24). Counsel went on to highlight the inconsistencies in the eyewitnesses' descriptions of the robber. (Id. at 24-40).

As the Court observed when it denied Petitioner's motion for judgment of acquittal, his "able counsel" "rightfully probed the accuracy of the evidence and raised legitimate questions for the jury to consider." (Crim. Doc. 98 at 9). While counsel might not have marshaled every conceivable witness or document that could have been used to impeach the witnesses, the record shows that counsel extensively questioned the accuracy of their testimony and argued that the jury should not rely on the government's evidence. "[T]he fact that other witnesses could have been called or other testimony elicited usually proves at most the wholly unremarkable fact that with the luxury of time and the opportunity to focus resources on specific parts of a made record, post-conviction [litigants] will inevitably identify shortcomings in the performance of prior counsel." Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 647 (11th Cir. 2016) (quotation marks omitted). However, "[t]he test for ineffectiveness is not whether counsel could have done more; perfection is not required." Waters, 46 F.3d at 1518. "[T]he test is ... whether what [counsel] did was within the 'wide range of reasonable professional assistance.'" Id. (citations omitted). Counsel's performance in drawing the jury's attention to the deficiencies in the eyewitness testimony fell within that "wide range of reasonable professional assistance."

Even if counsel had introduced additional impeachment evidence, such as Kennedy's identification of a different suspect in a photo lineup, there is not a reasonable likelihood the result would have been different. The reliability of the eyewitnesses' testimony was put squarely before the jury, which "was made well aware of the problems with eyewitness testimony" (Crim. Doc. 98 at 8 n.3) and "was encouraged to question the accuracy" of such evidence (id. at 8). Nevertheless, the jury weighed all the proof, including photographs and surveillance footage, and found Petitioner guilty. As such, the expanded ineffective assistance claim fails to establish that counsel's performance was deficient or prejudicial. Therefore, while Petitioner's request for leave to amend is due to be granted, the expanded claim is due to be denied.

## IV.    Conclusion

Having considered each of Petitioner's claims for relief, and finding that each claim lacks merit or has been procedurally defaulted, it is hereby **ORDERED**:

1. Petitioner John Edwin Corn's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1) is **DENIED**.

2. Petitioner's First Motion for Leave to Amend (Civ. Doc. 14) to add page citations is **GRANTED**, though it does not change the Court's analysis.

3. Petitioner's Second Motion for Leave to Amend (Civ. Doc. 15) and Third Motion for Leave to Amend (Civ. Doc. 22) are **GRANTED**. The claims contained therein are denied on the merits.

4. For the same reasons that the Court denies § 2255 relief, Petitioner's Motion for Summary Judgment (Civ. Doc. 21) and Motion for Writ of Mandamus

and an evidentiary hearing (Civ. Doc. 32) are **DENIED**.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue… only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Petitioner has not made the requisite showing in these circumstances. Because Petitioner is not entitled to a certificate of appealability, she is not entitled to appeal in forma pauperis.

**DONE AND ORDERED** at Jacksonville, Florida this 12th day of March, 2019.

TIMOTHY J. CORRIGAN
United States District Judge

lc 19

Copies:
Counsel of record
Pro se petitioner